Terry E. Welch (5819)
Kade N. Olsen (17775)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
twelch@parrbrown.com
kolsen@parrbrown.com

*Attorneys for Valtrus Innovations Limited*

---

# UNITED STATES DISTRICT COURT
# FOR DISTRICT OF UTAH

---

| | | |
|---|---|---|
| VALTRUS INNOVATIONS LIMITED<br><br>     v.<br><br>MICRO FOCUS SOFTWARE, INC. | § § § § § § § § § § § § | VALTRUS INNOVATIONS LIMITED'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO MICRO FOCUS<br><br>Civil. Action No. 2:22-mc-399 |

**INTRODUCTION**

Pursuant to 24 U.S.C. § 35 and Rule 45 of the Federal Rules of Civil Procedure, Valtrus Innovations Limited ("Valtrus") hereby moves to compel Micro Focus Software, Inc. ("Micro Focus") to comply with subpoenas to produce documents and witness testimony. This Motion stems from pending *inter partes* review proceedings that Google LLC ("Google") filed against Valtrus in the Patent Trial and Appeal Board ("PTAB") (collectively, "the PTAB proceedings"). In the PTAB, Google has asserted that Valtrus's patents are invalid based on other patents that supposedly predate Valtrus's patents, therefore rendering the Valtrus patents obvious.

To defeat Google's assertion, Valtrus seeks to demonstrate that the claimed inventions were conceived and reduced to practice before the alleged "prior art" on which Google relies (the "Swear Behind Analysis"). Specifically, Valtrus contends that the claimed inventions appeared in Verity K2 software that was released in early 2001. To demonstrate this, however, Valtrus needs access to the Verity K2 software source code and related documentation that is currently in the possession of Micro Focus, which acquired Verity.

Valtrus moved for permission from the PTAB to serve third-party discovery on Micro Focus pursuant to 24 U.S.C. § 35, which authorizes discovery for "use in any contested case in the Patent and Trademark Office." The PTAB reviewed Valtrus's discovery requests, found them appropriate, and granted Valtrus's motion subject to the implementation of certain redlines that narrowed the scope of some of the requests. Valtrus then promptly served subpoenas on Micro Focus seeking source code, documentation, and the deposition of a corporate representative as approved by the PTAB. The subpoena served on Micro Focus is unique in that the government agency under whose auspices it is authorized has already approved the scope and content of the request.

Time is of the essence. The PTAB proceeding must as a matter of statute be completed by April 12, 2024. Valtrus' submission to the PTAB presenting its Swear Behind Analysis is currently due to the PTAB on July 11, 2023. Valtrus attempted first service on Micro Focus three days after the PTAB

granted authorization.  Harbour Decl. Ex. 1.  Initially, Micro Focus was cooperative and began working with Valtrus to facilitate the review of relevant documents and source code.  On June 8, 2023, however, Micro Focus suddenly asserted that the subpoenas were premature and not valid (based in part on Google's pending motion for reconsideration).  Micro Focus stated that it therefore considered the matter "closed."  Micro Focus has taken this position despite Valtrus expressing a willingness to pay for the cost of the collection, review and production of documents, as well as to purchase a non-commercial license to the software (which is no longer offered for sale by Micro Focus).

## FACTUAL BACKGROUND

### I.   THE PTAB AUTHORIZES SUBPOENAS ON MICRO FOCUS

Valtrus is the successor in interest to a substantial patent portfolio created by Hewlett Packard Enterprise ("HPE") and its predecessor companies, including Verity.  Those patents include U.S. Patent Nos. 6,728,704 ("the '704 Patent") and 6,738,764 ("the '764 Patent").  The '704 Patent application was filed on August 27, 2001 and the '704 Patent issued on April 27, 2004.  Harbour Decl., Ex. 2.  The '764 Patent application was filed on May 8, 2001 and the '764 Patent issued on May 18, 2004.  Harbour Decl., Ex. 3.  The '704 and '764 Patents describe inventions that improve the performance and quality of search engines and the results they retrieve and present to users.  The inventions claimed in the patents were created by data scientists at Verity.  Harbour Decl., Ex. 2-3.  Verity was acquired by Autonomy in 2005 and Autonomy was acquired by HPE in 2011.  Harbour Decl., Ex. 13, Ex. 14.  Micro Focus, the subject of this motion to compel, acquired software assets and rights formerly developed and owned by Verity through its acquisition of Hewlett Packard Enterprise's software business in 2017.  Harbour Decl., Ex. 4.

Google filed petitions with the U.S. Patent & Trademark Office for *inter partes* review on the '704 and '764 Patents.  The PTAB instituted review of both patents in April 2023.  *See Google LLC v. Valtrus Innovations Ltd.*, IPR2022-01545 and IPR2022-01497 (P.T.A.B. Apr. 12, 2023).

Google seeks to invalidate the '704 and '764 Patents by arguing that certain patents filed before the '704 and '764 Patents rendered obvious claims in the '704 and '764 Patents.  More specifically, Google

asserts in the IPR2022-01545 proceeding that the '704 Patent is obvious in view of U.S. Patent No. 6,711,569 ("Bushee"). *See* Harbour Decl., Ex. 7, at 2-3. The application leading to the Bushee patent was filed on July 24, 2001, a bit over a month prior to the filing date of the '704 Patent. Harbour Decl., Ex. 5. In the IPR2022-01497 proceeding, Google asserts that the '764 Patent is obvious in view of U.S. Patent No. 7,231,381 ("Li"). *See* Harbour Decl., Ex. 7, at 2-3. The application leading to the Li patent was filed on March 13, 2001, about 1.5 months before the filing date of the '764 Patent. Harbour Decl., Ex. 6.

Valtrus, however, believes that the inventions claimed in the '704 and '764 Patents were conceived before Bushee and Li respectively and appeared in Verity source code and/or documentation that was used, published, and/or sold prior to the filing dates of Bushee and Li. Under Federal patent law, "a patent owner may antedate a reference by either showing actual reduction to practice prior to the effective date of the adverse reference or conception prior to the effective date of the adverse reference plus diligence to actual or constructive reduction to practice by the patent owner." *In re Steed*, 802 F.3d 1311, 1316 (Fed. Cir. 2015). Thus, if Valtrus establishes that the claimed inventions appeared in Verity source code and/or documentation prior to the filing dates of Bushee and/or Li, these patents would not qualify as prior art and therefore could not invalidate the '704 and '764 Patents.

As explained above, Micro Focus owns software assets and rights formerly owned by Verity, which Micro Focus does not deny. Valtrus therefore sought additional discovery beyond the PTAB's normally restrictive discovery procedures in order to establish when the claimed inventions of the '704 and '764 Patents were conceived and reduced to practice. To that end, Valtrus filed motions for additional discovery in both PTAB proceedings on May 1, 2023. These requests sought documents and testimony regarding the contents and earliest date of use, publication, and/or sale of Verity source code that embody the '704 and '764 Patents. Harbour Decl., Ex. 7, at 2-6. Valtrus requested (1) documents sufficient to show the content and operation of the Verity K2 software, including source code; (2) documents reflecting the relating to the earliest use, sale, offer for sale, or publication of the Verity K2

Software; and (3) the deposition of a corporate representative on these topics. Harbour Decl., Ex. 7, at 4-6.

The PTAB granted the motions, recognizing that Valtrus had met its burden to show that additional discovery from Micro Focus is in the interest of justice. Harbour Decl., Ex. 7 (*Google LLC v. Valtrus Innovations Ltd.*, IPR2022-01497, IPR2022-01545, Paper 22 (P.T.A.B. May 23, 2023)). The PTAB's order stated that Valtrus's evidence "tends to show beyond speculation that something 'useful' and 'favorable in substantive value' to Patent Owner's contentions will be uncovered from the Verity K2 source code." *Id.* at 10. Finally, "[t]o minimize any potential burden" imposed by Valtrus's requested discovery, the PTAB redlined Valtrus's discovery requests, including by "limit[ing] the request to the Verity K2 product(s) and to issues regarding conception and actual or constructive reduction to practice." *Id.* at 15-16.

## II.    MICRO FOCUS REFUSES TO COMPLY WITH THE SUBPOENAS

After the PTAB issued its order, Valtrus issued PTAB-authorized subpoenas for documents and testimony on Micro Focus on May 26, 2023 and had them served at various Micro Focus offices in the following week, including at the Micro Focus office in this district, where Micro Focus's United States headquarters is located. Harbour Decl., Ex. 1. Initially, Micro Focus was cooperative, and the parties had several preliminary discussions regarding the timing of review of source code, production of documents, and a potential deposition of Micro Focus's corporate representative. Harbour Decl., Ex. 9. To further ease the burden on Micro Focus, Valtrus offered to pay for the cost of the collection, review and production of the materials, and to pay for a non-commercial license to all the materials produced. Harbour Decl. ¶ 17.

On June 9, however, Micro Focus suddenly refused to engage further, stating that it "considers the matter to be closed." Harbour Decl., Ex. 10. The sole bases for Micro Focus's refusal to comply with the subpoenas were (1) they were not issued by a district court clerk and (2) the parties had filed motions to reconsider portions of the PTAB's discovery order, which, according to Micro Focus, renders

the subpoenas premature.  Harbour Decl., Ex. 10.  Valtrus responded that Micro Focus's contentions

were incorrect and again offered to work with Micro Focus to ease any burden relating to source code

or document production.  Harbour Decl., Ex. 11.  Since June 9, 2023, however, Micro Focus has ceased

communicating with Valtrus.

## ARGUMENT

### I.   LEGAL STANDARD

35 U.S.C. § 24 provides for discovery in "contested proceedings" before the Patent and

Trademark Office:

> The clerk of any United States court for the district wherein testimony is to be taken
> for use in any contested case in the Patent and Trademark Office, shall, upon the
> application of any party thereto, issue a subpoena for any witness residing or being
> within such district, commanding him to appear and testify before an officer in such
> district authorized to take depositions and affidavits, at the time and place stated in
> the subpoena.  The provisions of the Federal Rules of Civil Procedure relating to the
> attendance of witnesses and to the production of documents and things shall apply to
> contested cases in the Patent and Trademark Office.

35 U.S.C. § 24.  This provision "affords parties to contested PTO proceedings access to all of the Federal

Rules of Civil Procedure 'relating to the attendance of witnesses and to the production of documents

and things.'"  *El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161, 1163 (10th Cir. 2016).

Under the Federal Rules, "[t]he scope of discovery is broad.  'Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense.'"  *Hutchinson v. Kamauu*,

No. 220CV00796RJSDAO, 2022 WL 180641, at *1 (D. Utah Jan. 20, 2022) (quoting Fed. R. Civ. P.

26(b)(1)).  A party seeking to quash a subpoena in its entirety therefore has a "particularly heavy burden."

*D'anna v. Lee Memorial Health System*, No. 2:20-MC-196 HCN-DBP, 2021 WL 3913700, at *1 (D. Utah

Sept. 1, 2021).

### II.   VALTRUS' REQUESTS SEEK HIGHLY RELEVANT INFORMATION AND IMPOSE NO UNDUE BURDEN ON MICRO FOCUS

The information relating to Verity K2 software and when this software was created and made

available to the public are critical to Valtrus' defense of its patents against Google in the PTAB.  This is

why the PTAB concluded that "something useful will be uncovered" by Valtrus' requests and granting discovery was in the "interest of justice."  Harbour Decl., Ex. 7 (PTAB order at pp. 2, 12).  Valtrus' requests are also narrowly tailored and will impose no undue burden on Micro Focus.  Valtrus provided Micro Focus with a detailed description of the specific software features at issue.  Harbour Decl., Ex. 9 at 5-6. Valtrus also provided Micro Focus with claim charts that were submitted to the PTAB showing specifically where each element of its claims is present in the Verity software Micro Focus controls. Harbour Decl., Ex. 11 (letter to Micro Focus).  This provides a roadmap of exactly what materials need to be collected.

Moreover, the PTAB has already vetted the requests and even narrowed them in certain instances further easing the burden on Micro Focus.  This case is accordingly like *D'anna* where a court in this district enforced subpoenas that had already been scrutinized by a court in another jurisdiction.  *D'anna*, 2021 WL 3913700, at *1 ("This court will not disrupt the ruling of the Florida Court as to the relevance or breadth of information sought in the subpoenas.").  Similarly, there is no reason to upset the PTAB's considered judgment here.

During the parties' meet and confers, Micro Focus asserted that Valtrus's discovery requests were unreasonable because Valtrus had not identified the specific source code it wanted to review. Valtrus cannot possibly identify the exact source code it wants to review because it neither has access to the Verity K2 software nor the underlying source code.  Nevertheless, Valtrus has identified at least one example of relevant source code: the code corresponding to Copyright Registration Number TX0005762136 for Verity developer's kit v.2.7 that was created in 2001 and published on April 11, 2001.[1] Harbour Decl., Ex. 9 at 1.  Micro Focus never explains why it would have difficulty locating this particular source code as well as other functionally related code.  Valtrus also provided examples of the features of interest based on Verity marketing documents, such as "Parametric Selection," "Adaptive

---

[1] The first and last 25 pages of the Verity Developers Kit v. 2.7 is deposited with the United States Copyright Office.  Micro Focus can locate the rest of the code by using this as a reference.

Ranking," "Relevance Ranking," "Document Recommendation," and "Federated Search."  Harbour Decl., Ex. 9 at 5-6.

Valtrus further provided Micro Focus with claim charts that take publications regarding the Verity K2 software and map the descriptions in these publications to the claim limitations.  These publications include, for example, numerous Verity press releases, several white papers, including one titled "A Platform for Building Scaleable, Precision, High-Performance Knowledge Retrieval Applications," various academic articles and abstracts, and a description of the Verity Developers Kit among others.  Harbour Decl. ¶ 13.  This is not a situation in which Valtrus is seeking production of some unidentified code. This code was the subject of public commentary and description at the time of its release.

## III.   MICRO FOCUS'S  OBJECTIONS DO NOT EXCUSE ITS DECISION TO IGNORE THE SUBPOENA

Micro Focus has raised two objections, neither which have merit: (1) the subpoenas are invalid because they were not issued by a district court clerk; and (2) the subpoenas are "premature" because Valtrus and Google have sought reconsideration of the PTAB's ruling.

### A.   A Subpoena Under 35 U.S.C. § 24 May be Issued By An Attorney

The subpoenas here were issued by Valtrus' attorney of record in the PTAB proceedings. Harbour Decl., Ex. 12.  Rule 45 of the Federal Rules of Civil Procedure state that "[a]n attorney also may issue and sign a subpoena."  Fed. R. Civ. P. 45(a)(3).  The Federal Rules of Civil Procedure, are expressly incorporated into 35 U.S.C. § 24, the statute that allows parties to take discovery in proceedings before the PTO. 35 U.S.C. § 24 ("The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent and Trademark Office.").  As the Tenth Circuit has held, this necessarily includes Rule 45. *El Encanto, Inc.,* 825 F.3d 1161 (Section 24 "affords parties the right to compel nonparties to provide documents under Rule 45.").  It follows that a subpoena in a "contested PTO" proceeding may be issued by an attorney just like any other subpoena.

Micro Focus cited Section 24 for the proposition that a subpoena relating to a Patent and Trademark Office Proceeding must be issued by a court clerk. This is incorrect. The first sentence of Section 24, states that, with respect to subpoenas to take *testimony* specifically, "[t]he clerk of any United States court for the district wherein testimony is to be taken . . . shall, upon the application of any party thereto, issue a subpoena." 35 U.S.C. § 24. But this just means that a district court clerk *must* issue a *subpoena ad testificandum* upon application. It does not mean that this is the *only* way that party can obtain testimony from another party. Nor does the first sentence of Section 24 even mention *document* subpoenas.

Even assuming that issuance from a court clerk is required, which it is not, Valtrus' Motion should still be granted. It cannot be disputed that Micro Focus received the subpoenas, and courts in this Circuit have been hesitant to refuse to enforce subpoenas on the "basis of procedural technicalities." *Ellis-Hall Consultants, LLC v. Hoffmann*, No. 2:12-CV-00771, 2018 WL 4215114, at *3 (D. Utah Sept. 4, 2018) ("While the court could certainly require Defendants to re-serve the subpoenas, to do so would elevate form over substance and fly in the face of securing 'the just, speedy, and inexpensive determination of every action and proceeding.'") (quoting Fed. R. Civ. P. 1). Indeed, in the context of Section 24 in particular, the Tenth Circuit has emphasized that "[t]he power of the federal courts to enforce that right is not dependent on any particular formalism of procedure." *Natta v. Hogan*, 392 F.2d 686, 690 (10th Cir. 1968). It would be particularly improper to insist on such strict formalism here where time is of the essence given the pending deadlines in *inter partes* review proceedings.

In the alternative, if the Court concludes that a subpoena under Section 24 must be issued by a district court clerk, Valtrus respectfully requests that the Court orders the clerk to issue the subpoena and require Micro Focus to comply with it.

### B.     The Subpoenas Are Not Premature

Micro Focus's assertion that the subpoenas were premature because both parties are seeking reconsideration of the PTAB's discovery order is also incorrect. Valtrus has sought reconsideration so

that it can obtain some *additional* discovery from Micro Focus that the PTAB did not order, but this does not excuse Micro Focus's obligation to produce witnesses, documents, and source code that are responsive to Valtrus's current requests.  Nor can Micro Focus refuse to respond to discovery based on the speculative possibility that the PTAB may grant Google's motion for reconsideration.  *In re Republic of Ecuador*, 2011 WL 736868, at *4 (N.D. Cal. Feb. 22, 2011) ("Merely filing a motion for reconsideration does not stay an impeding deadline.") (collecting cases).  The PTAB's order remains in effect.  It has not stayed discovery pending reconsideration.  Micro Focus is essentially attempting to unilaterally institute a discovery stay by refusing to respond to Valtrus's valid subpoena.  This is improper.  *See, e.g., Kramer v. NCS Pearson, Inc.*, 2003 WL 21640495, at *2 (D. Minn. June 30, 2003) ("Discovery is not automatically placed on hold while alternate motions are pending.") (collecting cases).

## **CONCLUSION**

For the above reasons, the Motion should be granted.

Dated: June 19, 2023.

PARR BROWN GEE & LOVELESS

*/s/ Kade N. Olsen*
Terry E. Welch
Kade N. Olsen

*Attorneys for Valtrus Innovations Limited*
